# In the United States Court of Federal Claims

No. 17-60L
(Filed April 20, 2023)
NOT FOR PUBLICATION

```
* * * * * * * * * * * * * * * * *
                                 *
                                 *
GAIL ROBERTSON et al.,           *
                                 *
                Plaintiffs,      *
                                 *
        v.                       *
                                 *
THE UNITED STATES,               *
                                 *
                Defendant.       *
                                 *
* * * * * * * * * * * * * * * * *
```

## ORDER

As stated on the record at today's status conference, the government's motion to dismiss this case for failure to state a claim is **DENIED** without prejudice.

The issue raised by the government's pending motion to dismiss this case for lack of subject-matter jurisdiction is whether plaintiffs' takings claims accrued more than six years prior to the filing of the complaint, and are thus untimely under our statute of limitations, 28 U.S.C. § 2501.  The properties involved in this case suffered flooding in 1983 and again in March and August of 2016.  Plaintiffs initially filed their claim—alleging the taking of a permanent flowage easement—in January 2017.  The government argues that plaintiffs' causes of action accrued sometime between 1983 and 2008.  According to the government, plaintiffs learned that flooding would inevitably recur—thus accruing a flowage easement claim—both from the 1983 flood itself and from the information obtained during prior state court litigation.  In contrast, plaintiffs contend that it was not clear that floods would inevitably recur until they did, in 2016.  Plaintiffs maintain that their claims could not have accrued before that time.

The question is complicated by the very nature of the claims raised by plaintiffs.  Under binding precedents, courts use a multi-factor test in flood takings cases, considering factors such as the duration of the invasion, the government's intent, foreseeability, and the character of the land at issue.  *See Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2078 (2021); *Arkansas Game & Fish Comm'n v.*

*United States*, 568 U.S. 23, 38–39 (2012).  One major factor is the severity of the interference, which includes the frequency of recurrence.  *Ark. Game*, 568 U.S. at 39.  Under this test, a second flood is not an absolute prerequisite for accrual.  But a single flood without any additional evidence of inevitable recurrence is typically insufficient as a matter of law.  *See Stueve Bros. Farms, LLC. v. United States*, 105 Fed. Cl. 760, 764–65 (2012), *aff'd*, 737 F.3d 750, 757, 760 (Fed. Cir. 2013); *Quebedeaux v. United States*, 112 Fed. Cl. 317, 324 (2013).

After a single flood, it may be reasonable either to expect future floods or to deny that future floods will inevitably recur.  *See Hartwig v. United States*, 485 F.2d 615, 617–18, 620 (Ct. Cl. 1973); *Big Oak Farms v. United States*, 105 Fed. Cl. 48, 53–54 (2012).  The particular facts and circumstances dictate the result.  Moreover, even if an easement was taken by a first flood, later flooding may have exceeded the scope of that original easement, thus alerting plaintiffs about the existence of a separate second taking.  *See Narramore v. United States*, 960 F.2d 1048, 1051 (Fed. Cir. 1992); *cf. Bistline v. United States*, 226 Ct. Cl. 282, 283, 288 (1981) (finding that the scope of the initial easement was not exceeded).  The Supreme Court's recognition of temporary flood takings, *Ark. Game*, 568 U.S. at 38, underscores this possibility.

Under controlling precedent, a claim for taking due to flooding had been said to accrue "after it first became clearly apparent by the passage of time that the intermittent flooding was of a permanent nature."  *Barnes v. United States*, 538 F.2d 865, 873 (Ct. Cl. 1976).  In light of more recent precedents, including *Arkansas Game*, we should probably look for flooding "of a sufficiently recurring nature," rather than permanent.  In any event, the government acknowledges that an objective test is used in determining whether a plaintiff should have been aware of the existence of a claim, Def.'s Mot. at 12 (citing *Grass Valley Terrace v. United States*, 46 Fed. Cl. 629, 633 (2000)).  But while the late Mr. Robertson knew of the design issue and its alleged impact on flood susceptibility during the *Boudreaux* trial, whether he or his successors should reasonably have known that flooding was inevitably to recur is another matter.[†]

Defendant points out that in the *Boudreaux* litigation, plaintiffs' experts testified that rainfall comparable to that which caused the 1983 flood would be expected more frequently than every fifty years, and as frequently as every ten to twenty-five years.  Def.'s Mot. at 17–18.  But the government also introduced excerpts from that trial showing that the frequency of rainfall was not relevant to those proceedings.  Ex. 6 to Def.'s Mot. at 24.  Thus, the judge in that proceeding never made a determination as to the credibility of these opinions, and this Court is

---

[†] *See Boudreaux v. Louisiana*, No. 71,408, 2003 WL 25767344 (La. Dist. Ct. Aug. 6, 2003).

not in any position to do so, either.  The mere fact that opinions were stated, without more, does not establish the reasonableness of reliance upon them.

Moreover, as the plaintiffs point out, in arguing in support of the district court's dismissal of the *Young* case before the Fifth Circuit in 2013, three years before the recurrence of the floods, the federal government took the position that, with no flooding for thirty years, "There is no continuing injury or damage to Appellants, just appellants' fear of another inundation." Ex. A to Pls.' Opp'n at 18 (Appellee Brief, *Young v. United States*, No. 13-30094 (5th Cir. Apr. 10, 2013)). While this argument does not estop the government from maintaining to the contrary, it does show that whether recurring flooding was to be expected was a debatable question.

The severity of the invasion of land due to flooding is, without question, a factor in determining whether a taking has occurred, and is part of the calculus of when a claim accrued.  But the multi-factor, fact-specific nature of this inquiry inextricably intertwines the jurisdictional question of whether the claim accrued too long ago with the merits of the case.  Under these circumstances, it is proper to defer the jurisdictional determination until after discovery has taken place.  *See Forest Glen Props., LLC v. United States*, 79 Fed. Cl. 669, 678 (2007); *Bagwell v. United States*, 21 Cl. Ct. 722, 723–24, 729 (1990); *Beuré–Co. v. United States*, 16 Cl. Ct. 42, 52–53 (1988).  Whether and at what time plaintiffs had enough information to reasonably allege a taking cannot be determined at this stage of proceedings.

Therefore, the motion to dismiss is **DENIED** without prejudice.  The government shall file a response to the Second Amended Complaint on or by **May 18, 2023**.

**IT IS SO ORDERED.**

s/ Victor J. Wolski
**VICTOR J. WOLSKI**
Senior Judge
